We will then proceed to hear argument in the first case on calendar for argument this morning, which is 23-15296 Carl Hansen v. Elon Musk et al. And we will hear first from Mr. Thomas. Good morning, your honors. My name is George Thomas, and I represent appellant Carl Hansen in case number 23-15296. I would like to reserve one minute for rebuttal, if it may please the court. This case comes out of the United States District Court for the District of Nevada. Originally, Mr. Hansen, the plaintiff and appellant in this case, filed a Sarbanes-Oxley anti-retaliation claim and then added the claims of intentional interference of contract and breach of contract, with the latter being against the United States Security Association. Mr. Hansen, the case was then taken to arbitration after a motion to compel arbitration. It was moved to arbitration, and during arbitration, Mr. Hansen then brought forward a Nevada RICO allegation as well as a federal. The central issue, to cut to the chase, the central issue in this case is whether the statutory stipulation that Sarbanes-Oxley claims cannot be arbitrated presents some kind of a bar to the application of principles of preclusion from the arbitration to the Sarbanes-Oxley claim. Can you focus specifically on that question? Sure. Thank you, Your Honor. First, as you mentioned, Sarbanes-Oxley does contain an anti-arbitration clause, and it is our position that that is precise, deliberate, congressional intent for federal courts to handle this federal issue, both in legal findings as well as factual findings. In Greenblatt, it was a similar case, although it dealt with RICO, where the court said that it was the 11th Circuit said that arbitration on one RICO violation doesn't preclude the or on wire fraud issue doesn't preclude the court from hearing a RICO case, although the issues are exactly the same. And moreover, federal courts have consistently held that when claims that bring similar facts, even the same facts, are brought to arbitration, courts should be hesitant to preclude issues that are squarely in the focus of the federal court's jurisdiction. Can you address our decision in Clark v. Bear Stones and why that doesn't just resolve the argument that you're making today? Yes, Your Honor. That's certainly the position of the appellees and is the precedent of the court. Our position would be one that that case is either wrongly decided and should be overturned to focus more on the congressional intent. That would require an en banc rehearing. You're in front of a three-judge panel that's bound by circuit precedent. Yes, Your Honor. I felt obligated to. So either you can distinguish. I think the question is can you distinguish it or do you lose under it? Well, the one distinguishing factor is that there is a between the Sarbanes-Oxley legal framework and the Dodd-Frank legal framework, there's a difference in the analysis. And our position is more tailored towards the fact that the district court did not engage in any sort of independent factual analysis, rather couched their entire decision in what occurred in arbitration, where at the very least, even if it is a flippant analysis, maybe referencing and taking the evidence that was given at arbitration, giving it some recognition, however, the court, in our opinion, was still required to at least go through some sort of analysis or even quasi-analysis, but to just simply in an eight-page dismissal on claim preclusion, maybe one page just simply says these claims are identical, they're exactly the same. Well, they're not exactly the same. Did you object to the confirmation of the award? I do not believe that Appellant Hanson's trial counsel objected to the confirmation of the arbitration award. The only, I think, opposition that Mr. Hanson filed during the lower court proceedings was the responses to the motion to dismiss filed by the appellees. So the anti-arbitration provision of Sarbanes-Oxley at issue, by its terms, says if the agreement requires arbitration of the dispute arising under the section, then that isn't enforceable. But your client actually litigated the issue within Dodd-Frank of whether he had an objective basis to understand that there was a violation of securities laws, correct? Yes, Your Honor. So why is that issue not preclusive under issue preclusion, even if your client didn't arbitrate the Sarbanes-Oxley claim? Your Honor, I genuinely always remain candid. I don't have a perfect answer for that question. I think ultimately our position is that the congressional intent is clear, and when the statute has language that says that we should deter away from arbitrating certain issues, that it's the court's duty to do so. Again, the court could have taken the evidence, the pretrial, pre-arbitration briefings, the post briefings, and analyzed it and gone through a checklist of the claims and decided whether or not this should survive the motion to dismiss phase. But why should, in arbitration, the purposes of it and the principles of issue preclusion, why should the defendants have to relitigate what they view as a dispositive issue on the Sarbanes-Oxley claim? I don't know if we are asking for full relitigation, rather just surviving the motion to dismiss phase. This maybe is a case that gets resolved at summary judgment. But for the motion to dismiss, the courts are bound to take the facts that are in the complaint as true, make reasonable inferences in favor of the nonmoving party, and rule on the motion to dismiss in a vacuum. And it's our position that the court did not do so. And unless the panel has any further questions, I would hand over the microphone to the appellees. All right. You'll save your time for rebuttal. Yes, Your Honor. Thank you. All right. Thank you. Then we will hear first from Mr. Robertson for seven minutes. Good morning. Christopher Robertson for Elon Musk and the Tesla entities. I'll be arguing for seven minutes. Ms. Largent represents United U.S. Security Associates, and she'll have three minutes. So let's address the question you asked. Why doesn't Clark answer the question? And we believe, of course, it does. There's no question that arbitration, particularly arbitration here, and I think it's really important and I think members of the panel focused on this, there's no question there was a full and fair opportunity to litigate this claim with a former federal judge who heard evidence, heard witnesses, got extensive briefing. No part of the factual record was prohibited from being entered. When you look at Clark, what's interesting about Clark, and you mentioned it, is the legal proposition that arbitration can be issued preclusion is firm. There the concern was, and they talked about it, was the record was maybe incomplete. You don't have that issue here. This is an absolutely complete record that lasted three days of hearings. Well, I think you'd referred to that you had a full and fair opportunity to litigate the claim. I think we're talking about issue preclusion. Correct. Is it distinguishable that Sarbanes-Oxley has a broader coverage for whistleblowers than the Dodd-Frank claim? He didn't have a full and fair opportunity to litigate the gap between Sarbanes-Oxley's elements for whistleblower claims and Dodd-Frank, did he? Well, we believe he did. Certainly, and both Judge Hoffman at the arbitration and the district judge both evaluated that. When you think about what are the elements, the claims of a Sarbanes-Oxley claim, there's the four elements, right? There's protected activity. Was there some form of protected activity? And if you look at digital realty, Justice Ginsburg's opinion, she's very clear that the concern would be that these statutes need to be focused on violations of the securities laws. Well, that's not what Sarbanes-Oxley said. It provides also other fraud laws. Well, mail fraud, wire fraud, bank fraud, and securities fraud, but they all relate to a fundamental fraud on the shareholders of a public company. And here, factually, both at the arbitration, the judge found that what Mr. Hansen had raised in no way implicated shareholder fraud, whether that was rooted in mail fraud, wire fraud, bank fraud. Ultimately, what you need to have the whistleblower raise is some form of fraud that then manifests a fraud on shareholders of the company. And that simply wasn't here. That was what was found, and that's the issue that's precluded. I agree. We're not saying this is res judicata. It's clearly a different statutory claim. But the underpinnings and the facts, the actual underlying facts, that were found to be dispositive of the Dodd-Frank claim are also dispositive of the Sachs claim. Can we go back to Clark? Because I want to understand how you're contending Clark is relevant here. I mean, there's two potential issues when you think about preclusion and arbitration. One is kind of sort of a multi-factor analysis, whether the arbitration had sufficient quality, shall we say, to it, to merit being used for preclusive pert. But then the other is this sort of, is there a sort of per se rule for this type of claim against arbitrating it? Does Clark speak to that second issue? Yeah, we believe it does, and it all starts with Byrd. So it all starts with Byrd, the Supreme Court and Byrd, talking about not really the specific issue in this case, but talking about whether a court should stay one claim or the other, pending resolution of the other, whether that be in arbitration or in another proceeding. And that's where it really all starts. Because Clark, in saying it relies on the prior decision in Anderson. Yes. In saying it says an arbitration decision can have res judicata or collateral estoppel effect even if the underlying claim involves the federal securities lawyer. So it sets aside any claim that there's sort of a categorical bar, and it cites C.D. Anderson, and C.D. Anderson relies on McMahon. Correct. Which says that 12b-5, Enrico, claims arbitrable. So that just seems to say there is no bar for securities claims, but how does that address when we have a statutory provision that says these are non-arbitrable, So I'm not seeing how Clark addresses this second issue. Well, I think it's Greenblatt and Coffey, really, are the two cases that address that specific issue, Your Honor. At the time that those cases were decided, securities claims could not be arbitrated. So they clearly had to be broken off, and there were arbitrable and non-arbitrable claims. And those securities claims were non-arbitrable. And what the Court said is you can send the claims that are arbitrable to arbitration. You can stay the claims that are not subject to arbitration, which is exactly what happened here. And to the extent that the issues, the facts, the dispositive facts are decided in the arbitration, those can then be used for preclusive effect on the remaining non-arbitrable securities claim. I agree with you. Then what happened is in McMahon, in subsequent cases, the Supreme Court said certain securities claims are, in fact, arbitrable. Certain claims still aren't arbitrable. And there's still plenty of cases that have said separate the arbitrable from non-arbitrable claim. And certainly the Court could have allowed them to go in tandem. We know that we've seen those cases, but they didn't. And the Court specifically here said go arbitrate. Let's see what that results in factually and legally. And if those facts and legal conclusions are dispositive of what I have left in front of me, because I know it can't be arbitrated, I can use that for preclusive effect. And that's exactly what happened here. How about the ban on arbitration? Because basically the only time it's going to have any effect is if the only claim you have is Sarbanes-Oxley. Because if it's paired with anything else, then that will go to arbitration and then bind on the other. So it seems to undo the statutory policy. Well, I don't believe that's the case at all, Your Honor. I really don't. I think what it does is it says to a district judge, you know, look at the claims in front of you, and you can decide how to manage your docket. And you can either manage it by sending claims to arbitration. They clearly have to go to arbitration, keeping whatever claims don't, and then determining how you're going to manage your docket. Here, again, we have a full arbitration. The judge looked at the record. Are you suggesting they could have gone forward with the Sarbanes-Oxley claim while the arbitration was done? One hundred percent. And that has happened in other cases. The judge here just decided not to do that, allowed the claim to go forward, and then looked at what he had in front of him and said there's no reason to retry this case. It's already been tried. All the critical dispositive facts have been decided, and they've been decided in a way that would be dispositive of the Sarbanes-Oxley claim. So there's no need to get past a motion to dismiss or go to summary judgment or try the case again. It's been tried. It's been decided. And there's nothing left. Thank you, Your Honors. Thank you. We'll hear now from Ms. Larchin. Good morning, Your Honors. May it please the Court. Robin Larchin on behalf of Defendant Annabelle E. U.S. Security Associates, not United States Security Association, to be clear. I requested a brief time for oral argument today to highlight a unique difference between the defenses of my client, U.S.S.A., and the Tesla and Musk defendants, which I think has been kind of glossed over by plaintiff and appellant in this matter. And what that is is the arbitrator specifically found, after a lot of evidence and testimony in this matter, that U.S.S.A. did not have knowledge of any protected activity within the meaning of Dodd-Frank or Sox on the part of Mr. Hansen in order to thereafter retaliate against him for it. Just with respect to the kind of some activity in the August period, and he said that your client didn't know but that Musk and Tesla did know about that activity. Yes. And it's axiomatic that you can't retaliate against somebody for something you don't know about. Is that part of the prima facie case? Yes. Okay. And U.S.S.A. argued that in their pre-hearing arbitration brief, argued it in their post-arbitration brief. It has never been addressed by Mr. Hansen. It's never been responded to. U.S.S.A. argued it predominantly in its opening brief in this case. You won't find a mention of it in the reply brief by Mr. Hansen. I submit that the issue has been waived by Mr. Hansen by failure to address it before this court and that the order dismissing the claims against U.S.S.A. should be affirmed on that basis alone. Additionally, I want to highlight something that I think is important because Mr. Hansen seems to emphasize as his primary basis for saying that collateral estoppel can't apply to bar his SOX claim. He says that that's because SOX claims are unarbitrable. There's an exemption for them. That doesn't mean collateral estoppel can never apply. The Supreme Court has held that in two cases. The Ninth Circuit has recognized that collateral estoppel can still apply. The question is, was there a full and fair opportunity to litigate it and a record that shows that in the arbitration proceeding? Yes, there are two different claims, Dodd-Frank and SOX, and they have slightly different burden-shifting frameworks and things like that. But on the issue of what is protected activity, they're largely the same. If the court reads Digital Realty v. Summers, the Supreme Court explained that, and if you just look at the statute itself, the Dodd-Frank statute, it says that a whistleblower is someone who files an SEC complaint. You have to be a whistleblower in order to even be able to bring a Dodd-Frank claim. Thank you, counsel. Your time has expired. Thank you. Thank you. All right. We'll hear rebuttal from Mr. Thomas. Thank you, Your Honors. Just very briefly, earlier it was asked, why should defendants be forced to litigate something twice that they've already maybe addressed in arbitration? And what I hear Mr. Musk and TESLA propose is that Mr. Hansen could have proceeded with Sarbanes-Oxley claim while he was proceeding with the Dodd-Frank claim, and it then creates a framework where perhaps we are asking plaintiffs to then litigate two cases at the same time, creating perhaps the same concern for plaintiffs as we would for defendants. And furthermore, if we allow courts to push similar issues that retain the same facts to arbitration and then couch their dismissal on a preclusion nature on those arbitration findings, we are eviscerating and ignoring the fact that these claims cannot be arbitrated. And with that, I have no further argument for the panel. All right. Thank counsel for their arguments. And the matter of Hansen v. Musk is submitted.
judges: COLLINS, THOMAS, JOHNSTONE